## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

TAMARAH NORTON,

               Plaintiff,

     v.

ARCHETYPE CONSULTING, INC., JASON
WEBSTER, MAX GOMEZ, and ANDY
SCHLOSBERG,

          Defendants.

**CIVIL ACTION NO. _____**


**JURY TRIAL DEMANDED**

## COMPLAINT

### Introduction

Plaintiff Tamarah Norton ("Norton"), by her attorneys, Whitney Law Group, LLC, brings this complaint and seeks damages against her former employer, Archetype Consulting, Inc. ("ACI"), and three senior executives of the company, Jason Webster ("Webster"), Max Gomez ("Gomez"), and Andy Schlosberg ("Schlosberg"), (collectively "Defendants") based on ACI's failure to pay Norton her earned wages in violation of the Massachusetts Wage Act (the "Wage Act"), M.G.L. c. 149, § 148.

### PARTIES

1.     Norton is an individual residing at 8275 Varenna Drive, Sarasota, FL 34231 and is a citizen of Florida.

2.     ACI is a Massachusetts corporation with its principal place of business located at 180 Canal Street, Suite 600, Boston, MA 02114 and is a citizen of Massachusetts.

3.     Webster is an individual residing at 182 River Road, Hanover, MA 02339 and is a citizen of Massachusetts. At all times relevant to this action, Webster was the co-founder, President, and Treasurer of ACI. He also is the Registered Agent of ACI.

4.      Upon information and belief, Gomez is an individual residing in the city of Boston, Massachusetts and is a citizen of Massachusetts. At all times relevant to this action, Gomez was the co-founder and Executive Vice President of ACI.

5.      Upon information and belief, Schlosberg is an individual residing in the city of Hingham, Massachusetts and is a citizen of Massachusetts. At all times relevant to this action, Schlosberg was the Senior Vice President, Operations of ACI and oversaw, among other things, ACI's payroll function.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in the United States District Court, District of Massachusetts based on diversity jurisdiction, 28 U.S.C. § 1332(a).  The parties are diverse in citizenship and the amount in controversy exceeds $75,000.

7.      Venue is properly laid within the United State District Court for the District of Massachusetts - Eastern Division, under 28 U.S.C. § 1391, because Defendants reside within the Eastern Division of this judicial district and a substantial portion of events giving rise to the claims set forth herein occurred in this division.

## FACTS

8.      Norton began working at ACI in June 2018.

9.      On June 5, 2020, ACI terminated Norton's employment involuntarily. Her last title held at ACI was Senior Vice President, Performance Management Practice Lead.

### Failure to Pay 2018 Performance Bonus

10.      Under the terms of Norton's bonus plan, she was eligible to be paid a bonus for her work performed in 2018 (the "2018 Bonus").  The 2018 bonus was due to be paid by the end of March 2019.

11.     At the time the 2018 Bonus was due to be paid, ACI paid Norton $40,000.

12.     Upon information and belief, ACI did not calculate Norton's bonus properly and in accordance with the bonus plan.  If ACI had calculated it properly, it would have owed Norton a total bonus of $165,000.  Instead, ACI reneged on paying Norton the additional $125,000 that it owed.

### Failure to Pay 2019 Performance Bonus

13.     Under the terms of Norton's bonus plan, she was eligible to be paid a bonus for her work performed in 2019 (the "2019 Bonus").  Applying the formula in the bonus plan, ACI determined that the amount it owed to Norton for her 2019 bonus was $351,653.75.  The 2019 Bonus was due to be paid by the end of March 2020.

14.     ACI reneged on its obligation to pay Norton her 2019 Bonus when it was due.

15.     Instead, ACI made a partial payment of Norton's 2019 Bonus in the amount of $50,000 later in April 2020.

16.     Shortly thereafter, ACI proposed that it pay the remaining bonus owed over an extended period.  ACI informed Norton that it intended to sign a promissory note to cover the amount remaining to be paid.  Norton objected to the notion of a promissory note and instead demanded cash payment.  ACI, however, made it clear to Norton that she did not have any other choice. On or about May 22, 2020, Webster executed a promissory note in the amount of $301,653.75 payable to Norton from September 2020 through the end of 2022.

### Failure to Pay 2020 Quarterly Performance Bonus

17.     Through a series of oral statements and written communications, ACI informed Norton that her 2020 performance bonuses would be paid quarterly.  ACI promised that her 2020 bonuses would be paid buy the end of the quarter following the quarter in which the bonus was

earned.  Thus, Norton's Q1 performance bonus was based on results she obtained from January 1 through March 31, 2020 and was to be paid by the end of Q2, or by June 30, 2020.

18.     After the end of Q1 2020, ACI informed Norton that it had determined that her Q1 performance bonus was $50,000.

19.     ACI failed to pay Norton her Q1 2020 performance bonus in a timely manner.

### Retaliatory Discharge

20.     Throughout calendar year 2020, Norton had lost her patience with ACI's playing fast and loose with her bonus payments.  As a result, she expressed her dissatisfaction with ACI's continued and persistent failure to pay the promised amounts of her 2018 and 2019 bonuses. Norton expressly informed ACI that its failure to pay her earned wages owed was illegal.

21.     Her complaints about unpaid wages that she had earned and were definitely determined by ACI to be owed often boiled over into heated communications between Norton and Webster during the spring of 2020 and leading into May and June 2020.

22.     ACI terminated Norton's employment on June 5, 2020, even though she had consistently been a leading revenue generator for the company throughout her tenure.

23.     Upon information and belief, ACI terminated Norton's employment in retaliation for her constant complaints about the illegality of her unpaid wages.

24.     At the time of her discharge, Norton was entitled to be paid out in full her earned and definitely determined bonus wages for 2018, 2019, and 2020 as required by M.G.L. c.149, § 148.  Together, those amounts total $476,653.75 of unpaid, earned wages ($125,000 for her 2018 Bonus; $301,653.75 for her 2019 Bonus; and $50,000 for her Q1 2020 bonus).

25.     As of the date of filing, ACI has not made any further payments to Norton for her earned and unpaid wages, despite Norton's individual efforts to demand that ACI pay her properly.

26.     On July 9, 2020, Norton filed a written complaint with the Massachusetts Attorney General concerning her unpaid wage claims pursuant to M.G.L. c. 149, § 150 and requested a right to sue letter.

<u>**COUNT I**</u>
<u>**Failure to Pay Wages in Violation of M.G.L. c. 149, § 148**</u>
**(Against all Defendants)**

27.     Norton re-alleges the allegations contained in paragraphs 1 through 26, inclusive, with the same force and effect as if hereinafter set forth at length.

28.     Pursuant to M.G.L. c. 149, § 148B, Norton was an employee of ACI under M.G.L. c. 149.

29.     M.G.L. c. 149, § 148 requires the timely payment of all earned wages.

30.     Section 148 also provides in relevant part: "…and any employee discharged from such employment shall be paid in full on the day of her discharge."

31.     By failing to pay Norton the full amount of her earned wages for her 2018 and 2019 Bonuses on the date of her involuntary discharge (June 5, 2020), ACI violated M.G.L. c. 149, § 148.

32.     ACI further violated M.G.L. c. 149, § 148 when it failed to pay the full amount of Norton's earned wages for her Q1 2020 bonus by the date it was due (June 30, 2020).

33.     Defendant Webster is individually liable for the amounts owed to Norton because at all relevant times he was the President and Treasurer of ACI and was a person having the management of ACI within the meaning of the Wage Act, because he controlled, directed, and participated to a substantial degree in formulating and determining the financial policy of ACI.

34.     Defendants Gomez and Schlosberg are individually liable for the amounts owed to Norton because at all relevant times they were officers and agents having the management of ACI within the meaning of the Wage Act, because they controlled, directed, and participated to a

substantial degree in formulating and determining the financial policy of ACI.  In addition, Schlosberg oversaw ACI's payroll function.

35.     Defendants' failure to comply with M.G.L. c. 149, § 148 entitles the Norton to recover treble damages, interest, reasonable attorney's fees, and costs pursuant to M.G.L. c. 149, § 150.

**COUNT II**
**Retaliation for Complaints about Non-Payment of**
**Earned Wages in Violation of M.G.L. c. 149, § 148A**
**(Against all Defendants)**

36.     Norton re-alleges the allegations contained in paragraphs 1 through 35, inclusive, with the same force and effect as if hereinafter set forth at length.

37.     As outlined in detail above, Norton suffered mistreatment during her employment after she complained about non-payment of wages.

38.     Norton's numerous complaints about unpaid, earned wages detailed above were based on her reasonable belief that she should have been paid in a timely manner according to ACI's promises.

39.     Upon information and belief, Norton's persistent complaints about non-payment of earned wages were a determinative factor in ACI's decision to terminate her employment.

40.     Defendant Webster is individually liable for the amounts owed to Norton because at all relevant times he was the President and Treasurer of ACI and was a person having the management of ACI within the meaning of the Wage Act, because he controlled, directed, and participated to a substantial degree in formulating and determining the financial policy of ACI.

41.     Defendants Gomez and Schlosberg are individually liable for the amounts owed to Norton because at all relevant times they were officers and agents having the management of ACI

within the meaning of the Wage Act, because they controlled, directed, and participated to a substantial degree in formulating and determining the financial policy of ACI.

42.     Defendants' failure to comply with M.G.L. c. 149, § 148A entitles Norton to recover her lost back-pay, lost benefits, treble damages, interest, emotional distress damages, reasonable attorney's fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Norton respectfully requests that the Court grant the following relief:

1. judgment on Counts I and II;

2. an award of Norton's earned and unpaid wages;

3. an award of Norton's lost wages and benefits during her period of unemployment;

4. treble damages of Norton's earned and unpaid wages and her lost wages and benefits during her period of unemployment;

5. costs, reasonable attorney's fees, and statutory interest; and

6. such other relief as the Court deems just and proper.

## JURY DEMAND

Norton hereby demands a trial by jury on all claims raised in her Complaint that are so triable.

Respectfully submitted,

TAMARAH NORTON,

By her attorneys,

*/s/ Mark M. Whitney*

Mark M. Whitney (BBO # 637054)
Maureen T. DeSimone (BBO # 703358)
WHITNEY LAW GROUP, LLC
11 State Street
Marblehead, MA 01945
Phone: (781) 631-4400
E: mwhitney@whitneylawgroup.com
E: mdesimone@whitneylawgroup.com

Dated: July 9, 2020