**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

TAMARAH NORTON,

               Plaintiff,

     v.

ARCHETYPE CONSULTING, INC., JASON
WEBSTER, MAX GOMEZ, and ANDY
SCHLOSBERG,

          Defendants.

CIV. NO. 1:20-CV-11299-GAO

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITON TO
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Mark M. Whitney (BBO # 637054)
Maureen T. DeSimone (BBO # 703358)
WHITNEY LAW GROUP, LLC
11 State Street
Marblehead, MA 01945
P: (781) 631-4400
E: mwhitney@whitneylawgroup.com
E: mdesimone@whitneylawgroup.com

Dated: December 16, 2020

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF CONTENTS ........................................................................................................ i

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...................................................................................................1

ARGUMENT .......................................................................................................................1

I.   Norton Has Pleaded Plausible Claims Under *Iqbal/Twombly* ................................. 1

II.  Plaintiff Complied With Pre-Suit Requirements Of The Wage Act...................... 2

III. Plaintiff's Bonuses Were Definitely Determined, Declared Due and Payable By ACI, and Thus Constitute Wages Under the Wage Act .................................................................. 4

    A.   Key Facts Pertaining to Bonus Claims ......................................................... 4

    B.   ACI Cannot Hide Behind Unfulfilled Eligibility Requirements Where it Declared Norton's Entitlement to Bonuses ......................................................................... 5

    C.   The Wage Act Covers Earned Bonuses, Especially Where They Are Based on Revenues Generated by an Employee ......................................................... 6

    D.   A Recent BLS Case is Directly on Point and Demonstrates that "Discretion" Does Not Permit An Employer to Renege on Paying a Bonus After it has Been Declared, and the Bonus is Subject to the Protections of the Wage Act ...................................... 8

    E.   Defendants Seek to Rely on Prohibited Special Contracts to Avoid Paying Wages.. 11

    F.   Norton's End of Employment Does not Preclude Entitlement to a 2020 Bonus........ 12

IV.  Plaintiff's Unpaid Commissions Claim Is Alleged Sufficiently, Where the Information She Needs to Prove it is Controlled by ACI ................................................................... 13

V.   Norton Has Pleaded Sufficient Details to Establish a Retaliatory Discharge Claim........... 13

VI.  Plaintiff Has Alleged Sufficient Facts To Hold Gomez And Schlosberg Personally Liable Under The Wage Act ............................................................................................... 16

VII. Norton's Covenant Of Good Faith And Fair Dealing Claim Should Stand, as it is More than Sufficiently Pled ............................................................................................... 17

VIII. Plaintiff's Unjust Enrichment Claim Is Viable Because Plaintiff Pleads This Claim In The Alternative and Defendants Misrepresent the Scope of the Bonus Plan ............................ 19

IX.  Norton Has Pleaded Facts Supporting the Requisite Elements of a Promissory Estoppel Claim............................................................................................................. 19

CONCLUSION..................................................................................................................21

## INTRODUCTION

The plaintiff in this action, Tamarah Norton ("Plaintiff" or "Norton"), by and through her undersigned counsel, hereby submits this memorandum in opposition to the Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") filed by the Defendants in this action, Archetype Consulting, Inc. ("ACI), Jason Webster ("Webster"), Max Gomez ("Gomez"), and Andrew Schlosberg ("Schlosberg") (collectively, "Defendants") [Docket # 19] (the "Motion").

## STATEMENT OF FACTS

For ease of review, Plaintiff describes pertinent fact allegations below in each argument section. Plaintiff also incorporates by reference herein and continue to rely upon the entire FAC.

## ARGUMENT

### I.   Norton Has Pleaded Plausible Claims Under *Iqbal/Twombly*

When reviewing a complaint on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). The Court "may consider not only the factual allegations of the amended complaint but also any matters fairly incorporated within that pleading." *Ruiz*, 496 F.3d at *5. Complaints must only state a claim that is plausible on its face to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir.2013).

In determining whether a complaint crosses the plausibility threshold, "the reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. This context-specific inquiry does not demand "a high degree of factual specificity." *Grajales v. Puerto Rico Ports Authority,* 682 F.3d 40, 47 (1st Cir. 2012). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence . . .. " *Twombly*, 550 U.S. at 570. Here, the FAC is supported by detailed factual allegations and, therefore, it more than adequately meets *Twombly* and *Iqbal*'s baseline plausibility standard.

## II.      Plaintiff Complied With Pre-Suit Requirements Of The Wage Act

In their Motion, Defendants argue that Plaintiff's did not comply with M.G.L. c. 149, § 150 (the "Wage Act") by failing to exhaust administrative remedies ("FEAR"). This is patently false. To support their assertion, Defendants rely on *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019) which held that Title VII's filing requirement is not jurisdictional but is still mandatory. *Id.* at1851–52. *Fort Bend Cty. Texas* is thus inapposite here and its ruling should not be applied as the Massachusetts Supreme Judicial ("SJC") court has already clarified that M.G.L. c. 149, § 150 is different than the "discrimination statute." *See Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 613 (2013). Further *Fort Bend Cty. Texas* should not be applied to a question of Massachusetts law where, such as here, there is SJC precedent directly on point.

The Wage Act's provision that a Plaintiff "may, 90 days after filing a complaint with the attorney general, or sooner if the attorney general assents in writing," is merely a notice requirement and not a jurisdictional requirement. M.G.L. c. 149, § 150; *Depianti*, 465 Mass. at 613 ("Section 150 stands in stark contrast to the antidiscrimination statute. It does not provide a comprehensive remedial scheme to resolve claims outside a judicial forum."). "[F]ailure to file a complaint with the [AG] before initiating a private suit for alleged employment violations does

not interfere with the accomplishment of the statutory purposes of § 150 to a substantial degree, at least where the [AG] is notified of the suit during its pendency." *Id.* "[U]nlike the filing requirement in [the antidiscrimination law, G.L. c. 151B], the filing requirement in § 150 triggers no mandatory agency investigation or administrative adjudicatory action" and therefore does not operate "as the necessary first step in a comprehensive remedial scheme...." *Lipsitt v. Plaud*, 466 Mass. 240, 249–50 (2013). Further, because the filing requirement under the Wage Act is simply to provide the Attorney General ("AG") notice of the alleged violations so she may, but is not required to, investigate and prosecute the alleged violations, this is very different than the "mandatory prompt investigation" the MCAD is required to perform under M.G.L. 151B." *Depianti,* 465 Mass. at 613 (while M.G.L. ch. 151B grants MCAD exclusive jurisdiction over discrimination claims for 90 days, AG is not required to pursue alleged Wage Act violations).

Plaintiff alleged that she notified the AG of her M.G.L. c. 149, § 150 claim. FAC ¶ 59. Further, Plaintiff received a right to sue letter from the AG on July 10, 2020. *Id.* Courts in this district, have frequently denied defendants' motions to dismiss based on FEAR where the AG received notice of plaintiff's Wage Act claims. *See Wilson v. Entergy Nuclear Operations, Inc.*, No. 17-CV-10877-ADB, 2019 WL 4417771, at *n.3 (D. Mass. Sept. 16, 2019) ("Although the Complaint does not allege that Mr. Wilson brought his retaliation claim to the state attorney general before filing suit, this does not bar his claim at this time."); *MacDonald v. J. Brown, Inc.*, No. CV 15-13252-MLW, 2016 WL 5024196, at *1 (D. Mass. Sept. 16, 2016) (plaintiff had "plausibly alleged he had notified the [AG] of his § 150 claim" and that the defendant's motion to dismiss was not meritorious); *Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 27 (D. Mass. 2011) (denying motion to dismiss and allowing plaintiffs to amend complaint to add facts relating to AG notification); *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 163 (D. Mass. 2002) (denying motion to dismiss for FEAR even though plaintiff failed to name them in her AG

complaint because M.G.L. c. 149, § 150 was a notice only requirement). Because Massachusetts law is abundantly clear on this point, Defendants' Motion should be denied.

III.   **Plaintiff's Bonuses Were Definitely Determined, Declared Due and Payable By ACI, and Thus Constitute Wages Under the Wage Act**

Defendants argue that because ACI's bonus plan contained a "discretion" clause, it gave ACI *carte blanche* to reverse a prior bonus declaration and renege on long overdue payments. Indeed, Defendants would have it that they could declare a bonus, communicate the exact bonus amount earned to Norton, renege on the payment of the bonus and, ultimately, use "discretion" retroactively to excuse ACI's subsequent failure to pay. This position is grossly at odds with the concept of "earned" compensation under the Wage Act and should be soundly rejected.

Norton's position with respect to her unpaid bonuses is simple: once ACI declared that she had earned a bonus and informed her of the amount earned, ACI's opportunity to exercise its "discretion" ended and the declared bonus becomes earned wages, subject to the Wage Act. Any contract provision that would permit an employer to renege on a payment that was earned violates the Wage Act's prohibition against special contracts. In addition, the label attached to a form of payment is not determinative of whether it is covered by the Wage Act, and Norton's "bonuses" here are more akin to a commission under the Act. Norton's position is the right one, and it is completely in line with a broad range of applicable precedent.

A.   **Key Facts Pertaining to Bonus Claims**

Although the FAC contains numerous allegations concerning ACI's failure to pay Norton her earned wages, the following are examples of some key facts. For example, Norton alleges that Webster confirmed to her several times that she had earned her full 2018 bonus of $165,000 and that was confirmed separately by an ACI accounting department employee. FAC ¶ 13. Norton alleges that confirmation of these statements should exist within ACI's e-mail system, which she cannot currently access. *Id.* She asserts that Webster told her that the company could

4

not pay her the 2018 bonus due to cash flow but reiterated that it would be paid. FAC ¶ 17.

Norton alleged that the 2018 bonus was due by the end of March 2019 and was paid partially and

late in December 2019. FAC ¶¶ 11, 16, 18. As to her 2019 bonus, Norton alleges that ACI

communicated to her that it had determined that it owed her $351,653.75 under the bonus plan

and that payment was due at the end of March 2020. FAC ¶¶ 21, 23. Norton also asserts that ACI

failed to pay the bonus on time and made a partial payment late, in April 2020. FAC ¶ 29.

Norton alleges that the parties entered into a promissory note for the amount remaining under the

2019 bonus. That note specified that it "***represent[ed] the total amount owed to [Norton] under***

***the Practice Leader Bonus Plan for the fiscal year ended December 31, 2019*** …." FAC ¶ 29.

For both the 2018 and 2019 bonuses, Norton alleges that ACI exercised its discretion to

determine and inform her of the amounts of her bonuses. FAC ¶¶ 14-15; 21. Concerning her

2020 bonus, Norton alleges that it was not covered by any written plan and she had asked for

ACI to provide a written bonus plan, but it never did. FAC ¶¶ 31-33. She next alleges that ACI

communicated that she would be eligible to receive $150,000 in bonus payments over three

quarters in 2020. Norton then averred that ACI informed her that it determined that she had

earned a quarterly bonus payment of $50,000 that it never paid. FAC ¶¶ 36-39.

In addition, Norton has alleged that her 2018 and 2019 bonuses were subject to a bonus

plan that contained a formula for calculating the amount owed. FAC ¶¶ 14, 20. Defendants have

attached the bonus plan for 2018-2019 to their Motion as Exhibit A [Docket #20-1]. The plan

contains detailed formulae for calculating bonus payments "based on revenue recognized in the

plan year" generated by Norton. *See* Ex. A to Motion papers, at pp. 11 of exhibit.

### B. ACI Cannot Hide Behind Unfulfilled Eligibility Requirements Where it Declared Norton's Entitlement to Bonuses

Defendants argue that Plaintiff failed to meet the eligibility requirements for the 2018 and

2019 bonuses because "she failed to sign and return an unmodified copy" of the bonus plan and

employee agreement. It is well established that parties to a contract may waive compliance of certain provisions and requirements. *Certified Power Sys., Inc. v. Dominion Energy Brayton Point, LLC*, No. BRCV2008-01114, 2012 WL 384600, at *61 (Mass. Super. Ct. Jan. 3, 2012) ("In general, parties to a contract may waive compliance with a provision in a written construction contract requiring a written order form for additional work, and may orally agree for work to be performed outside the written contract."); see also *J.P. Smith Co. Inc. v. Wexler Constr. Co., Inc.,* 353 Mass. 551, 555, 233 N.E.2d 723 (1968) (finding waiver of unspecified provisions for "prior notice and written order"); *M.L. Shalloo, Inc. v. Ricciardi & Sons Constr., Inc.,* 348 Mass. 682, 684–685, 205 N.E.2d 239 (1965) (finding waiver of provision that "No extra work ... under this contact will be recognized or paid for, unless agreed to in writing before the work is done."); *Zarthar v. Saliba,* 282 Mass. 558, 560, 185 N.E. 367 (1933) (finding waiver of provision that "no charge for extra work will be honored and paid unless owner shall order same by a writing directed to the contractor stating the nature of the work to be performed and the sum to be paid therefor."). Here, ACI cannot hide behind eligibility requirements where it declared Norton's entitlement to her bonuses.

## C. The Wage Act Covers Earned Bonuses, Especially Where They Are Based on Revenues Generated by an Employee

The Wage Act has as its purpose the protection of employees from the detention of wages by unscrupulous employers. *Lipsitt*, 994 N.E.2d at 783; *Melia v. Zenhire, Inc.*, 462 Mass. 164, 170, 967 N.E.2d 580, 587 (2012). The Wage Act does not expressly define or limit the meaning of the term "wages." *Weems v. Citigroup Inc.*, 453 Mass. 147, 151 (2009). Indeed, labels such as "bonus" should not be binding on the court for the purpose of determining whether some types of compensation constitute "wages" under the Wage Act. *See also Wiedmann v. The Bradford Grp., Inc.*, 444 Mass. 698, 703-04, 708 (2005) (noting that M.G.L. c. 149, § 150 "limits the defenses available to an employer for nonpayment of wages" and emphasizing that the key factor is

6

whether the amounts owed to the plaintiff were "definitely determined" or "arithmetically determinable"). Thus, the statute focuses on when wages are "earned" by the employee. *See Weems*, at 154; *see generally Harrison v. NetCentric Corp.,* 433 Mass. 465, 466 (2001) (court focused on whether the employee was deprived of any income he had earned). "[The legislative] history shows that the Wage Act was intended to protect an employee's right to timely collect "definite earnings." *Lambirth v. Advanced Auto, Inc.*, 140 F. Supp. 3d 108, 111 (D. Mass. 2015).

Further demonstrating how labels are irrelevant when interpreting employer obligations to pay employees various forms of compensation, this Court has noted that generally commissions are the types of payments based on the employee's generation of revenue versus sharing in profits. In a recent case before this Court, the parties disputed whether variable payments based on sales revenue were commissions or bonuses. The employer argued that the payments were bonuses and outside the scope of the Wage Act. This Court held that where the employee's variable compensation was based on revenues generated for the employer by the employee, the payments constituted commissions for purposes of the Wage Act. *See Israel v. Voya Institutional Plan Servs., LLC*, No. 15-CV-11914-ADB, 2017 WL 1026416, at *5 (D. Mass. Mar. 16, 2017) (Burroughs, J.). This Court further emphasized that even true bonuses fall within the protection of the Wage Act when they are "earned." *Id.* at *5-6 *citing Sheedy v. Lehman Bros. Holdings Inc.*, No. CIV.A. 11-11456-RGS, 2011 WL 5519909, at *1 (D. Mass. Nov. 14, 2011) (same) (Stearns, J.). The *Israel* decision discussed several bonus cases and evaluated whether they were payments under the Wage Act or not, and concluded:

> The better reading of these cases is that a true bonus normally falls outside the bounds of the act, with the possible exception of a situation where the bonus has been promised, the employee has fulfilled her end of the bargain, and yet the employer attempts to renege. *See Sheedy*, 2011 WL 5519909, at *4 ("The law is clear that incentive or other bonus compensation is outside the scope of the Wage Act unless it qualifies as 'commissions' that are ascertained and due.").

*Israel*, 2017 WL 1026416, at *6; *see also Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*, 368 F.

Supp. 3d 302, 314 (D. Mass. 2019) ("quantitative bonus award" that was based on individual's

gross sales was "akin to that of commissions, not bonuses" and covered by Wage Act); *Feygina*

*v. Hallmark Health* Sys*., Inc.*, No. MICV2011-03449, 2013 WL 3776929, at *5 (Mass. Super.

Ct. July 12, 2013) (The court explained that "[w]here an employee is promised both a base salary

and additional payments based 'on the amount of revenue [s]he generated' for her employer,

those additional payments are 'commissions' subject to the Wage Act."), *citing Okerman v. VA*

*Software Corp.*, 69 Mass. App. Ct. 771, 772, 776-80 (2007).). In *Feygina*, the court was

particularly influenced by the fact that the employer was able to determine the amount of annual

incentive compensation award owed to the employee after it "finished collecting all of the

revenue generated" by the employee, thus rendering the incentive compensation "arithmetically

determinable." *Id.* at 780 (quoting *Wiedmann*, 444 Mass. at 708).

Norton has alleged that ACI exercised its discretion to determine her bonus amounts,

communicated those amounts to her, and then reneged. The record further indicates that the

bonuses are akin to commissions because they are based upon revenue generated by Norton.

**D.** **A Recent BLS Case is Directly on Point and Demonstrates that "Discretion" Does Not Permit An Employer to Renege on Paying a Bonus After it has Been Declared, and the Bonus is Subject to the Protections of the Wage Act**

Throughout ACI's briefing – there is a recurrent theme that because the bonus payments

for 2018 and 2019 were subject to ACI's discretion, the bonuses at issue cannot be subject to the

Wage Act.[1] However, in a recent Suffolk Business Litigation Session ("BLS") case with largely

identical issues, the Court *denied* the employer's motion for summary judgment where it argued

that "the determination of Plaintiff's bonus compensation remained within [the employer's]

---

[1]       The 2018 and 2019 bonuses were subject to the bonus plan attached as Ex. A to the Motion papers [Docket # 20-1]. However, the Ex. A bonus plan, by its own terms, does not apply to the 2020 bonus. Norton alleged that the 2020 bonus is based on verbal promises, because ACI never provided a written plan for 2020 despite her numerous requests that she be provided with one. FAC ¶¶ 31-36.

discretion and therefore . . . does not qualify as 'wages' for the purposes of the Wage Act." *Brennan v. Arthur D. Little, Inc.* Decision and Order on Defendant's Partial Motion for Summary Judgment [Docket No. 48] Suffolk Super. Ct. No. 1884CV02845-BLS1 Oct. 8, 2020 (Davis, A.J.) (Attached hereto as <u>Exhibit A</u>, relevant portions highlighted).

The BLS rejected this argument, making express reference to the fact that the summary judgment record in that case included "credible evidence . . . that, internally at least, ADL regarded Plaintiff's bonus on [the sale] as having been earned no later than December 2015." The BLS then held that there existed a genuine issue of material fact regarding the employer's obligation to pay the claimed bonus. *Id.* Key to the BLS's decision in *Brennan* was evidence adduced through discovery that "internally" the employer viewed the bonus as having been "earned" and then only subsequently did it decide to walk back the payment relying on its "discretion." *Id.* The *Brennan* decision declined to dismiss the Wage Act claim based on unpaid bonuses, and that issue is moving toward trial. *Brennan* therefore stands for the proposition that bonuses that have been *declared* by the employer are earned wages, covered by the Wage Act.

It is important to note that the BLS evaluated *Brennan* under the Rule 56 standard. Here, the Court must consider factual allegations to be true and construe all reasonable inferences in Norton's favor under the Rule 12(b)(6) standard. Thus, the question at this stage of the proceedings is whether Norton has alleged that the bonuses were determined, declared and, therefore, constitute earned wages. Norton clearly meets this minimal standard. Taking these allegations as true and construing all reasonable inferences in favor of Norton, Norton has alleged plausible claims under the Wage Act.

Another case from this Court provides additional guidance for the instant case and dictates that ACI's claim that it could refuse to pay Norton's bonus as "discretionary " is a misnomer. In *McAleer v. Prudential Insurance Company of America*, 928 F. Supp. 2d 280 (D.

Mass. 2013) (Woodlock, J.), Prudential unsuccessfully argued that McAleer's commissions were not arithmetically determinable because Prudential reserved discretion to decline payment where it terminated the plaintiff's employment. Judge Woodlock disagreed: "While Prudential exercises substantial discretion in the *administration* of the commission plan, the commissions are not *themselves* discretionary ... When a compensation plan sets out the contingencies the employee must meet to earn a commission, courts apply the terms of the plan." *Id.* at 288 (emphasis added). That Court further remarked that to be "definitely determinable," the commission at issue must be "arithmetically determinable." *Id.* The 2018 and 2019 bonus plans (Ex. A to the Motion, Docket #20-1) clearly show a mathematical formula. Judge Woodlock emphasized that, "[t]he plan does not afford Prudential carte blanche to withhold or modify commission payments for any reason. It simply affords discretion over factual determinations, calculations, and eligibility. To interpret the discretion under the plan as broadly as Prudential would have it would render the plan meaningless." *Id.; see also Parker v. EnerNOC, Inc.*, 484 Mass. 128, 136 (2020) (the SJC stated that situations where an employer could try to use contract provisions that result in employees forfeiting earned wages as unlawful). "*McAleer* establishes that commissions contemplated by an employment contract that reserves some discretion for the employer are not removed from the ambit of the Wage Act due solely to the discretionary aspect of the contract." *Israel*, 2017 WL 1026416, at *6.

Here, like in *McAleer*, the plan at issue for Norton's 2018 and 2019 bonuses provided ACI with discretion to interpret and administer the plan, including determining eligibility. Importantly, the 2018/2019 plan also provides that: "All decisions made by [ACI] shall be final and binding." *See* Ex. A to Motion [Docket #20-1] at pp. 10, § II(A) ("Company's Discretion to Interpret the Plan") (emphasis added). Thus, by the plan's own terms, once ACI makes the decision to declares the bonus amount for a given year and communicates that decision to

Norton, the decision is "final and binding." Again: "When a compensation plan sets out the contingencies the employee must meet to earn a commission, courts apply the terms of the plan." *McAleer* at 288. The same should apply here to the 2018 and 2019 bonuses.

### E.   Defendants Seek to Rely on Prohibited Special Contracts to Avoid Paying Wages

ACI seeks to rely upon special contracts to avoid the timely payment of wages in two different ways. First, ACI's assertion of unfettered discretion to refuse to pay a previously declared bonus under the guise of "discretion" is a prohibited contract under the Wage Act. Second, to the extent that ACI seeks to rely upon the promissory note to avoid the 2019 bonus, that note is another prohibited special contract.

First, when enacting the Wage Act, the legislature was cognizant of the risk that employers would attempt to avoid compliance and added the following language: "No person shall by a special contract with an employee or by any other means exempt himself from [the Wage Act]" M.G.L. c. 149, § 148. The special contract provision is "strictly enforced." *Fraelick v. Perkett PR, Inc.,* 83 Mass. App. 698, 707 (2013). An agreement to circumvent the Wage Act is illegal even when "the arrangement is voluntary and assented to." *Camara v. Attorney Gen.,* 458 Mass. 756, 760–761 (2011). Antiwaiver provisions are characteristic of laws that protect fundamental public policy. *Melia v. Zenhire, Inc.*, 462 Mass. 164, 170 (2012); *Parker*, 484 Mass. at 133 (The act also forbids "special contracts" between an employer and employee that purport to exempt the employer from the requirements of the act. G. L. c. 149, § 148, sixth par.).

Just because ACI purports to reserve discretion with respect to "interpretation" of the plan, this does not displace the law of Massachusetts. The BLS, in a similar case to the present one, found that similar "interpretation of plan" language did not give an employer *carte blanche* to alter the employee's bonus entitlement as it willed. In denying summary judgment for Defendant, the Court wrote that

> Unidine admits that if the Presence Health contract had counted towards Ales' sales quota, he would have been eligible to receive bonus payments under the Plan. . . As can be seen, this paragraph [reserving "interpretation" of the plan to the employer] does not give Unidine the explicit discretion to refuse to pay a bonus that was otherwise earned under the Plan. To the extent [Unidine] attempts to reserve to management the right to "interpret," "withdraw," or "modify" the Plan, such power must be viewed in the light of the implied covenant of good faith and fair dealing inherent in every contract.

*Smith v. Unidine Corp.*, No. SUCV2015-3417, 2017 WL 4411249, at *7 (Mass. Super. Ct. July 25, 2017).

The compensation plan "interpretation" provision in which ACI attempts to reserve for itself the power to refuse to pay a previously declared bonus in its sole and unassailable discretion to "interpret" the plan comprise are virtually the same and comprise such a "Special Contract." Indeed, as set forth above, Ms. Norton clearly alleges that ACI did interpret its plan and exercised its discretion to determine specific amounts that she had earned. To the extent that ACI relies upon the "interpretation of the plan" provision in an effort to reserve to itself the unilateral and unassailable power to renege on a declared and earned bonus, it comprises a special contract that violates Massachusetts law. Defendants' Motion should be denied.

**F.  Norton's End of Employment Does not Preclude Entitlement to a 2020 Bonus**

It is also worth noting that ACI seeks to argue that because Norton's employment ended, she is not entitled to receive a bonus payment for the 2020 bonus. ACI asserts that the terms of the Ex. A bonus plan [Docket # 20-1] provide that one must be employed to be eligible to receive a bonus. This is wrong for three reasons. First, by its express terms, the bonus plan does not apply to 2020. Second, Norton alleged that there was no written plan for 2020. And third, even if the Ex. A plan applied to the 2020 bonus, it is unlawful to fail to pay a bonus based on termination of an employee where the employee alleges that such termination was in retaliation for complaining about wages. *Parker v. EnerNOC, Inc.*, 484 Mass. 128, 136 (2020) (holding that

a compensation policy violated the law against "special contracts" where the employee complained about retaliatory termination).

**IV.     Plaintiff's Unpaid Commissions Claim Is Alleged Sufficiently, Where the Information She Needs to Prove it is Controlled by ACI**

Norton alleges in the FAC that she was entitled to receive commissions based on deals that she sourced, as set forth in the bonus plan. FAC ¶ 40. She asserted that ACI informed her that the commissions would be paid monthly. FAC ¶ 41. Norton then alleges that she needs to obtain discovery from ACI to provide her with precise information (dates, details, and amounts), but she is certain that she is certain she was paid late for the vast majority (if not all) of her commission payments. FAC ¶¶ 42-43. This claim is alleged sufficiently.

This Court has previously held that a plaintiff's indication in a complaint that key information in the possession of the defendant is necessary to determine specifics underlying an unpaid commission claim was sufficient to withstand a motion to dismiss. In *McAleer*, this Court stated "[a]lthough McAleer does not allege the precise amount of the cumulative gross sales he brought in, he alleges approximate amounts and further alleges that Prudential precisely tracks these sales such that he can seek production of the precise figures in discovery. Between his allegations regarding the commission plan and his allegations regarding the cumulative gross sales on which the commissions are calculated, McAleer has pleaded sufficient facts to show that the amount of his unpaid commissions is 'arithmetically determinable' and therefore 'definitely determined' under the meaning of the Wage Act." *McAleer*, 928 F. Supp. 2d at 287–88. Here, it would be inappropriate to penalize Norton simply because she needs to obtain information in discovery to put meat on the bones of her late-paid commissions claim.

**V.     Norton Has Pleaded Sufficient Details to Establish a Retaliatory Discharge Claim**

In their Motion, Defendants wrongfully contend that Norton voluntarily resigned from her employment with ACI and failed to allege sufficient facts to establish a retaliation claim.

Defendants are mistaken, and rely on incomplete and out of context references to the FAC. To establish retaliatory termination in violation of Massachusetts General Laws ch. 149, § 148A, a plaintiff must demonstrate that "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity." *Karatihy v. Commonwealth Flats Dev. Corp.*, 84 Mass. App. Ct. 253, 255 (2013) (citing *Mole v. Univ. of Mass.*, 442 Mass. 582, 591-92 (2004)). Causation can be inferred from the temporal proximity of the complaints and the termination. *Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*, 368 F. Supp. 3d 302, 314-15 (D. Mass. 2019) (plaintiff terminated "shortly" after complaints sufficiently alleged causation). Plaintiff has sufficiently demonstrated all three required elements of a retaliation claim in her FAC.

First, Norton has sufficiently alleged that she has made several complaints regarding ACI's failure to pay promised 2018 and 2019 bonuses stating that failure to pay was "illegal." Throughout calendar year 2019 and 2020, Norton frequently expressed her dissatisfaction with ACI's continued and persistent failure to pay the promised amounts of her 2018 and 2019 bonuses informing them it was illegal. FAC ¶ 44. Her complaints about unpaid wages she earned and were definitely determined by ACI to be owed often boiled over into heated communications between Norton and Webster during the months preceding her termination put a strain on their relationship. FAC at ¶¶ 45-46.

Second, Plaintiff has sufficiently pleaded that Defendants' forced her involuntary discharge with the company – an adverse employment action and that this adverse employment action was causally linked to her engagement in the protected activity – her complaints about ACI failing to pay her bonuses. Norton and Webster engaged in operational disagreements which layered on top of Norton's constant and persistent complaints about payment issues all came to a head during the period from June 5 to June 11, 2020. FAC ¶¶ 47-48. On June 5th (Friday),

Norton and Webster engaged in a heated phone call and Webster made it extremely clear to Norton that she was no longer welcome at ACI. FAC ¶ 49. On June 8, Norton sent a detailed email to Webster in which she pushed back, among other things, the way Webster had treated her in the June 5th call. FAC ¶ 50. On June 11th, as a last-ditch effort, Norton emailed Webster asking to work through challenges. FAC ¶ 51. Minutes later, Webster emailed Norton and made it clear to her that he did not intend to work through challenges with her. *Id.* After their tense email exchange on June 11th, Norton and Webster engaged in another heated discussion ending with Webster communicating in essence that if she did not want to abide by "his rules" then she was "not welcome at his company" – making it clear to her that he needed to go and her employment was over. FAC ¶ 52. Later that evening, Norton took a step toward complying with Webster's communications about the end of her employment at ACI by writing to Schlosberg and informing him that it had been made clear that she is not viewed as effective in her position by "company leadership" (i.e., Webster) and asked to discuss an exit strategy for her. FAC ¶ 53. Within 45 minutes, Webster emailed Norton and demanded her resignation. *Id.* The next morning, Norton discovered that ACI had shut off her computer system access and she received an email (personal account) again demanding her resignation. FAC ¶ 54.

In sum, Webster's series of written and verbal communications from June 5 to June 11, which led to her ultimate termination, are causally linked to Webster's ongoing frustration with Norton engaging in protected activity such as: 1) her persistent demands about payments; and 2) her constant complaints about the illegality of her unpaid wages. FAC ¶¶ 55-56. Although complex, it is clear from the facts alleged in the FAC that Norton's termination was involuntary as a result of Webster's actions and communications making it abundantly clear to Norton that she was no longer welcome in his company and her employment had ended. For these reasons, Defendants' Motion should be denied.

**VI.**    **<u>Plaintiff Has Alleged Sufficient Facts To Hold Gomez And Schlosberg Personally Liable Under The Wage Act</u>**

Defendants Gomez and Schlosberg seek dismissal from this suit under the proposition that neither of them can be held individually liable under the Wage Act. (Defendant Webster does not contest his potential for individual liability.) Plaintiff has properly pleaded facts to assert liability against both Gomez and Schlosberg, and their Motion should be denied.

"Courts have generally agreed that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable ... for unpaid wages." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013); *Cook v. Patient Edu, LLC*, 465 Mass. 548, 549 (2013) ("We conclude that a manager who controls, directs, and participates to a substantial degree in formulating and determining the financial policy of a business entity. . . may be a person having employees in his service under G.L. c. 149, § 148, and thus may be subject to liability for violations of the Wage Act."). Further, the Wage Act imposes individual liability for payment of wages upon "[e]very public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees" who fails to do so." *Cook*, 465 Mass. at 553. The Wage Act imposes liability on officers and managers who may not hold the title of president or treasurer but "who have assumed and accepted as individuals significant management responsibilities over the corporation similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or payment of wages." *Segal v. Genitrix, LLC*, 478 Mass. 551, 559 (2017).

Plaintiff has asserted in her FAC that Gomez was the co-founder and Executive Vice President of ACI. FAC ¶ 69. The trio of Webster, Gomez, and Schlossberg were considered to be the company "executive leadership team." *Id.* Schlosberg was the Senior Vice President, Operations of ACI and oversaw, among other things, ACI's payroll function including the

payment of bonuses and commissions. *Id.* As the members of the ACI executive leadership team, Gomez and Schlossberg routinely participated in the most important decisions that impacted the policies and direction of the company. *Id.* In Gomez and Schlosberg's roles as ACI's corporate executives they not only controlled, directed, and participated in creating the policies regarding ACI's bonus payments, they also had the power to determine whether payments were or *were not* (as in this case) made. Further, Norton put them directly on notice that ACI missed or delayed payments and Gomez and Schlosberg determined that missed or delayed payments to Plaintiff should continue. FAC ¶¶ 69 & 46. Because Gomez and Schlosberg were members of the "executive leadership team" and routinely controlled, directed, and participated in creating polices regarding the policies and direction of the company, including overseeing ACI's payroll functions such as the payment of bonuses and commissions, Gomez and Schlosberg have "assumed and accepted as individuals significant management responsibilities over the corporation similar to those performed by a corporate president or treasurer." This portion of the Motion should be denied because Plaintiff has pleaded more than sufficient facts to bring Gomez and Schlosberg within the coverage of the Wage Act.

## VII.   Norton's Covenant Of Good Faith And Fair Dealing Claim Should Stand, as it is More than Sufficiently Pled

Defendants assert that Plaintiff casted a "wide net" and utilized an "'everything but the kitchen sink' approach" to pleading her breach of the implied covenant of good faith and fair dealing claim ("GFFD"). Setting aside Defendants' apparent displeasure with this claim, Norton has properly pleaded her claim succinctly by both incorporating both "all fact allegations set forth above" but also providing specific detail such as "and is not limited to, ACI's persistent failure to pay Norton fully and in a timely manner, ACI's making of false promises designed to induce her to continue performing services for ACI to her ultimate detriment, failing to provide

17

accurate revenue and cash flow when explaining non-payment or late payment, and terminating her employment shortly before 2020 bonus payments should have been paid." FAC ¶ 79.

Under Federal Rules of Civil Procedure ("FRCP"), a plaintiff is only required to provide a "short plain statement of the claim showing that the pleader is entitled to relief . . .." *See* Fed. R. Civ. P. 8(a)(2) & (3); s*ee also Iqbal*, 556 U.S. at 678 ("detailed factual allegations" not required). Defendants next assert that Plaintiff failed to state a "cognizable claim" for GFFD because she asked the Court to substitute her "discretionary bonus. . . for a guaranteed bonus." As discussed thoroughly in **Section III**, *supra* and **Section IX***, infra,* Plaintiff's assertion is wide of the mark. Next, Defendants claim that Plaintiff has not properly alleged facts to support her conclusion that ACI terminated her "to avoid paying her 2020 bonus payment" and that she did not "allege facts demonstrating an entitlement to a non-discretionary bonus for 2020." As stated in **Section V**, *supra,* Plaintiff properly alleged facts to support her claim that ACI terminated her to avoid paying her 2020 bonus payment as a result of her "numerous complaints about unpaid, late paid, or under-paid earned wages." It is well established that under the *Fortune*[2] doctrine that "an employer who terminates an employee 'without good cause' in order to deprive him of commissions may violate the covenant of good faith and fair dealing." *McAleer*, 928 F. Supp. 2d at 91 (D. Mass. 2013), *citing Krause v. UPS Supply Chain Solutions, Inc.,* No. 08–cv10237, 2009 WL 3578601, at *14 (D. Mass. Oct. 28, 2009) (holding that a plaintiff may state a claim for bread of GFFD based on refusal to pay commissions in violation of the Wage Act where plaintiff alleged her termination as not in good faith). As further established in **Section III**, *supra,* Plaintiff has properly alleged facts to demonstrate she was entitled to a 2020 bonus payment. For all these reasons, Plaintiff has more than sufficiently pleaded her claim for GFFD.

---

[2]      *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 104 (1977).

18

**VIII.   Plaintiff's Unjust Enrichment Claim Is Viable Because Plaintiff Pleads This Claim In The Alternative and Defendants Misrepresent the Scope of the Bonus Plan**

Defendants effort to dismiss the unjust enrichment claim fails for two reasons. First, Norton pleads in the alternative. Second, the written bonus plan does not cover the 2020 bonus.

Defendants assert in their Motion that Plaintiff is "not entitled to recover under [a claim of unjust enrichment/quantum meruit] because the Bonus Plan is an existing contract that controls the compensation to which Norton is entitled." While Plaintiff contends that the incentive payments she is owed are subsumed as part of the bonus plan, Plaintiff pleads recovery under unjust enrichment/quantum meruit *in the alternative.* FAC ¶ 82. Rule 8 permits claims pleaded in the alternative. *See* Fed. R. Civ. P. 8(d)(2); *see also Lass v. Bank of Am.*, N.A., 695 F.3d 129, 140 (1st Cir. 2012)) ("Federal Rule of Civil Procedure 8(d) 'permits [p]laintiffs to plead alternative and even inconsistent legal theories such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories.'"). In addition, as set forth in Section III, *supra*, Defendants have misrepresented the scope of the bonus plan, as it does not cover the 2020 bonus. Accordingly, the Plaintiff's Count IV should not be dismissed.

**IX.   Norton Has Pleaded Facts Supporting the Requisite Elements of a Promissory Estoppel Claim**

In their Motion, Defendants assert that Plaintiff could not "reasonably relied on alleged promises that contravene the express terms of her Bonus Plan." Defendants Memorandum in support of the Motion at 17. Defendants misapprehends the claim. Norton's promissory estoppel claim has nothing to do with any written bonus plan. Defendants also accuse Norton of not alleging reasonable reliance, but they are wrong again. This portion of Defendants' Motion is baseless and should be denied.

Plaintiff levels clear and specific allegations about promises that ACI made, including increase salary for 2020, promises of a written bonus plan for 2020, payments of $50,000

quarterly bonuses in 2020, payment of the remainder still owed from her partially paid 2018 bonus. *See* Count V generally. Norton specifically alleges that ACI should have reasonably expected her to rely on these promises, and then specifically avers that she did in fact rely on those promises and stayed with the company. FAC ¶¶ 93-94. She then alleges that ACI broke all of the promises. FAC ¶¶ 95-97. Thus, Norton <u>did</u> clearly allege that she relied to her detriment.

Defendants reliance on *NaviSite, Inc. v. Cloonan* is misplaced because the court found that the defendant there made little more than proposals and incomplete negotiations. No. CIV.A. 02-1949, 2005 WL 1528903, at *11 (Mass. Super. Ct. May 11, 2005). Plaintiff's reliance on *Hall v. Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 93 (1987) is similarly misplaced. *Hall* involved reliance on a "a preliminary proposal" which "contemplate[d] significant details to be worked out" relating to an option to buy stock.

Unlike *NaviSite* and *Hall*, the promises alleged by Norton are clear and precise. When considering a claim of promissory estoppel, this Court has emphasized that a representation of future, rather than present, intention will not preclude recovery. *See Sullivan v. Chief Justice for Admin. & Mgt. of Trial Court,* 448 Mass. 15, 28 & n. 9 (2006); *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 340 (D. Mass. 2011). The putative promise, like any offer, must be sufficiently "definite and certain in its terms" to be enforceable. *Id.* Typically, where the Massachusetts courts have applied the doctrine of promissory estoppel, "there has been a pattern of conduct by one side which has dangled the other side on a string." *Dixon v. Wells Fargo Bank, N.A.,* 798 F. Supp. 2d 336, 344 (D. Mass.2011). Norton alleges strong dangling <u>throughout</u> the entirety of the FAC. Because Norton has more than adequately alleged facts sufficient to state a claim for promissory estoppel, Defendants' Motion should be denied.

## **CONCLUSION**

For the several reasons set forth above, this Court should deny Defendants' Motion and permit Plaintiff's claims to be heard on their merits.

Respectfully submitted,

TAMARAH NORTON,

By her attorneys,

*/s/ Mark M. Whitney*

Mark M. Whitney (BBO # 637054)
Maureen T. DeSimone (BBO # 703358)
WHITNEY LAW GROUP, LLC
11 State Street
Marblehead, MA 01945
Phone: (781) 631-4400
E: mwhitney@whitneylawgroup.com
E: mdesimone@whitneylawgroup.com

Date: December 16, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 16, 2020.

 */s/ Mark M. Whitney*
Mark M. Whitney